# IN RE. VEDDER.

### Sixth Judicial District Court, Oct., 1857.

#### PROBATE COURTS.

The provisions of the statute, authorizing probate judges to appoint guardians, are not in conflict with the section of the constitution vesting district courts with all the powers known to courts of equity.

The facts are sufficiently referred to in the opinion.

.Smith & Hardy, for petitioner.

T. Conger, for the guardian.

BOTTS, J.—This case comes up on a *habeas corpus ad subjiciendum,* in which the petitioner seeks to be restored to the custody of her infant female child, thirteen months of age. The return to the writ shows that the child is in the care and keeping of her grand-father, who has been appointed her guardian, with the right of custody, by the probate judge, for the county of Nevada.

The only inquiry proper to this proceeding is this—is the infant in legal custody? That the equity powers of this court extend to all questions of guardianship is, I think, hardly to be doubted. The sixth section of the 60th article of the constitution invests the district courts with all the powers known to courts of equity, and none of those powers are more thoroughly established than the full authority over the subject of the guardianship of minors. But it is the common law, and not the equity powers of this court, that are invoked by this proceeding.

The common law courts possess no power of this kind. They exercise no supervision over the subject of guardianship. It is true, that upon a writ of *habeas corpus,* a common law court, or a judge thereof, may inquire whether the prisoner is illegally detained, but they can go no further; if it appear that the defendant is in the custody of a guardian, appointed by the court of competent jurisdiction, the inquiry is at an end, and the defendant must be remanded. Up to this point the law is clear enough, and it would seem that its application to this case

is not less apparent. But the counsel for applicant raises this grave question: Is not the statute conferring powers of guardianship upon the probate court, in opposition to that distribution of judicial powers established by the sixth article of our constitution? To sustain his position, he refers the court to the case of Parsons vs. The Tuolumne Co., 5 *Cal.* 43. The Supreme Court in that case, undoubtedly, declared that the legislature can confer upon the county courts no jurisdiction over subjects included in the " general frame-work of courts of common law and equity." It is clear that the appointment of guardians was, by the common law system, vested in the chancery court, and that it is therefore by the constitution vested exclusively in the district court. If this were so, it would follow that the appointment of Vedder was a nullity, and as the only question to be determined on this application is as to the lawful right to the custody of the infant, and as the law unquestionably confers that right upon the mother, in the absence of the father, although equity may deprive her of it, it would follow, that it would be my duty to order the child into its mother's keeping.

But there are two answers to the argument of the learned counsel for the applicant: First, it does not appear that at common law the chancery court exercised the power of appointing guardians. Time out of mind, the chancery court of England exercised a supervisory power over the whole subject of infants and their estates; even to the removing of one guardian, perhaps, and the substitution of another; but the power of original appointment began to be exercised by the court of chancery in England, about the latter part of the reign of William III. (See Reeve's Domestic Relations, p. 316.) It is true that Chancellor Kent, in the 2d vol. of his Commentaries, p. 226, says: " the power of the chancellor to appoint guardians for infants, is a branch of his general jurisdiction over minors and their estates, and that jurisdiction has been long and unquestionably settled." But an examination of the earlier authorities to which he refers, will show, that they sustain the *supervisory power* only. At the common law, therefore, we hold that chancery exercised only a supervisory power, in its nature appellate, over the appointment of guardians.

But the constitution of California provides, that the county judge shall perform the duties of surrogate or probate judge. The term sur-

rogate in England, is applied, I believe, to the deputy or vice chancellor of the ecclesiastical courts. The power of the ecclesiastical courts to appoint guardians to the persons of infants, has always been a bone of contention between those courts and the common law lawyers of England. But in Vermont, Massachusetts, Connecticut, New York, New Jersey, and probably in all the states where the term surrogate, or probate judge is used at all, the power of appointment is lodged with that officer. I take it, then, that when the constitution confers upon the judge of the county court, the powers of a surrogate, or probate judge, it intends that that officer shall exercise the power of appointing guardians to infants.

This is enough for the purposes of this case. The infant was in the lawful custody of her guardian—let her be remanded.